IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PEYUNNEY BROWN, KIWANIS DANIELS, )
LATONYA DAVIS, SAMMY DAVIS, )
LAQUITA HOPKINS, JESSICA JACKSON, )
JEFFREY LOVE, MARCUS MOORE, )
ANTHONY SPINO, HUBERT WATSON, and )
MS. JESSICA WILSON, )
)
        Plaintiffs, )
)
vs. ) No. 05 C 6554
)
FOOT LOCKER, INC., )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed suit claiming that defendant violated wage and hour laws when it failed to compensate plaintiffs for all hours that they worked. Plaintiffs also allege that this conduct constitutes intentional infliction of emotional distress ("IIED"). Defendant moves for summary judgment on that claim. For the following reasons, we grant defendant's motion.

## BACKGROUND

Generally a full recitation of the facts is necessary to decide a motion for summary judgment. However, we find such a recitation unnecessary here, since even if we were to deem admitted all of plaintiffs' facts (which we do not, as defendant has disputed most of them), we would still find that plaintiffs have not raised a genuine issue of material fact.

Plaintiffs' case can be summed up as follows. Plaintiffs are current and former employees of Foot Locker Retail, Inc., a subsidiary of defendant, that operates in Illinois selling athletic footwear to the general public. Each alleges that he or she worked hours that

he or she was not paid for. Each further alleges that defendant's failure to pay him or her for all hours worked constituted intentional infliction of emotional distress. In their depositions, plaintiffs characterize defendant's conduct as making them "angry," "frustrated," "mad," and/or "stressed out" (S.L. Davis dep., pp.43-44; Moore dep., pp.60-61; Jackson dep., p.35; Love dep., p.30; Spino dep., pp.38-39). Some plaintiffs testified to feeling "cheated" or "stepped on," or that they were being "treated like sh--" (Love dep., p.24; Daniels dep., p.49). A number of plaintiffs testified that because of their not being paid, they were having trouble paying bills or taking care of their families (Brown dep., p.111; Hopkins dep. p.53; Jackson dep., p. 35; Love dep., p.30; Moore dep. pp.60-61; Watson dep., pp.16-17). One plaintiff testified that she often had to work until 1:00 a.m. on school nights – far beyond her scheduled time, and that she was yelled at by her grandmother for the way defendant was treating her (Davis dep., pp.96-97). Another testified that she was evicted from her apartment for non-payment of rent (Jackson dep., p.35). No plaintiff testified that he or she had sought or received medical attention for the alleged emotional distress, and a majority specifically denied needing or seeking such help (Brown dep., pp.115-116; L. Davis dep., p.86; S.L. Davis dep., pp.43-44; Love dep., p.24; Moore dep., p.60; Spino dep., pp.13-14; Wilson dep., pp.45-46).

## DISCUSSION

We have jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331, since plaintiffs allege violations of the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*). We also have supplemental jurisdiction over plaintiffs' IIED claim pursuant to 28 U.S.C. § 1367.

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We draw all inferences and view all admissible evidence in the light most

favorable to the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). This does not mean there must be no evidence supporting the non-moving party, but rather, that it is not enough to support a reasonable jury verdict. *Id.* at 248.

To recover on an IIED claim, plaintiffs must offer evidence establishing that defendant engaged in "extreme and outrageous" conduct that it intended to or knew would cause, and in fact did cause, "severe emotional distress." <u>Doe v. Calumet City</u>, 161 Ill. 2d 374, 392 (Ill. 1994). Conduct is extreme and outrageous when it leads the average member of the community to exclaim, "Outrageous!" *Id.*, citing Restatement (Second) of Torts § 46, Comment d, at 73 (1965). "Such conduct must be differentiated from the 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' that are part of the costs of complex society from which the law provides no protection." *Id.* "Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of a particular case." *Id.*

Defendant makes four arguments in support of its motion: plaintiffs have not demonstrated that they suffered severe emotional distress; plaintiffs fail to show that defendant's conduct was extreme and outrageous; plaintiffs fail to demonstrate defendant intended to cause them distress; and even if plaintiffs could prove an IIED claim, that claim is barred by the exclusivity provision of the Illinois Workers' Compensation Act. Plaintiffs' response to these arguments is cursory, at best.

Plaintiffs point to the above-cited testimony and argue that reading that testimony in a light most favorable to them, they have made a claim for severe emotional distress. In <u>Honaker v. Smith</u>, the Seventh Circuit held that

> when plaintiffs have complained that a defendant's actions caused them simply

> to become annoyed, frustrated, stressful, distressed, embarrassed, humiliated or nervous, those plaintiffs have been found not to have stated a claim under Illinois law. In contrast, when the distress has manifested itself either through physical symptoms or has necessitated medical treatment, Illinois courts have been more inclined to characterize the emotional distress as severe.

256 F.3d 477, 495 (7th Cir. 2001)(collecting cases); *see also* Johnson v. K Mart Corp., 311 Ill. App. 3d 573, 581 (Ill. App. Ct. 1st Dist. 2000)("feelings of stress and distrust neither satisfy this requirement nor constitute a question of fact regarding the severity of emotional distress suffered by plaintiffs").

Plaintiffs offer no medical evidence of emotional distress, but argue that the intensity of the distress can be gleaned from the repetitious nature of the conduct – each plaintiff dealt with the distress at least every two weeks for an extended period of time – by the constant reminder of the distress from plaintiffs' inability to pay bills, and from the fact that this conduct allegedly occurred at at least nine different stores, and was condoned by at least five different managers. Plaintiffs cite no case law in support of their arguments. The Honaker court noted that physical injury and medical treatment are not necessarily prerequisites for an IIED claim, especially where the defendant's conduct is particularly extreme and outrageous. *Id.* (Illinois cases "have acknowledged that, even when significant evidence was not presented as to the severity of distress, the very nature of the conduct involved may be evidence of its impact on the victim"). Intensity and duration of extreme and outrageous conduct are factors to be considered when determining the severity of emotional distress. Public Finance Corp. v. Davis, 66 Ill. 2d 85, 88 (Ill. 1976). This is especially so in the employment context. Pavlik v. Kornhaber, 326 Ill. App. 3d 731, 745 (Ill. App. Ct. 1st Dist. 2001)("Illinois courts have said that in many contexts, including employment, repetition of the behavior may be a critical factor in raising offensive acts to actionably outrageous ones").

When an employer's conduct is both coercive and retaliatory, courts have generally found the conduct to be extreme and outrageous, constituting a claim for intentional infliction of emotional distress. <u>Graham v. Commonwealth Edison Co.</u>, 318 Ill. App. 3d 736, 747 (Ill. App. Ct. 1st Dist. 2000). Plaintiffs have not alleged such coercion and retaliation. There is no testimony that plaintiffs were threatened with termination if they declined to work off the clock or demanded to be paid for all hours worked. <u>Honaker</u>, 256 F.3d at 490-91(defendant's conduct will be deemed outrageous when the alleged conduct involves either a veiled or explicit threat to exercise his or her authority or power to plaintiffs' detriment). The majority of plaintiffs testified that when they brought their concerns to management, they were either told they would be caught up "next week" or were bribed with lunches and shoes in exchange for working off the clock (Davis dep., p.97; Daniels dep., p.28; Moore dep., p.60; Watson dep., pp.14, 31, 82). Only two plaintiffs offer any testimony of retaliation – one who testified that his managers "nitpick[ed]" him after he complained, and another who testified she was not given hours during two months of her employment (Brown dep., p.117; Jackson dep., p.32). We find that even if true (and defendant disputes that it is), this behavior is not so reprehensible as to constitute extreme and outrageous conduct necessary to sustain an IIED claim. *See e.g.* <u>Harriston v. Chicago Tribune Co.</u>, 992 F.2d 697, 702 (7th Cir. 1993)(summary judgment affirmed, where plaintiff alleged that she was prohibited from supervising two white subordinates, reprimanded without cause, forced out of her management position, falsely accused and threatened with discipline, her telephone calls were monitored with an eavesdropping device, and her concerns for her safety were ignored). Since no reasonable jury could find that defendant engaged in extreme and outrageous conduct, or that plaintiffs suffered from severe emotional distress, their claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, defendant's motion for partial summary judgment is granted.

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

April 30, 2008.